UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CHRISTINE L. SIMMONS,<br><br>   Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,[1]<br>Commissioner of Social Security,<br><br>   Defendant. | No. EDCV 06-979 FFM<br><br>MEMORANDUM DECISION AND ORDER |

On September 18, 2006, plaintiff Christine L. Simmons brought this action seeking to overturn the decision of the Commissioner of the Social Security Administration[1] denying her application for Supplemental Security Income and Disability Insurance Benefits. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. Pursuant to the Court's September 20, 2006 case management order, on June 18, 2007, the parties filed a Joint Stipulation detailing each party's arguments and authorities. The Court has reviewed the administrative record ("AR"), filed by defendant on May 30, 2007, and the Joint Stipulation ("JS"). For the reasons stated below, the decision of the Commissioner is reversed and remanded for further proceedings.

---

  [1] Michael J. Astrue became Commissioner of the Social Security Administration on February 12, 2007 and is hereby substituted as defendant pursuant to Federal Rule of Civil Procedure 25(d).

## PROCEDURAL HISTORY

On September 3, 2002, plaintiff filed an application for Supplemental Security Income and Disability Insurance Benefits. Plaintiff alleges a disability onset date of July 10, 1999. The application was denied initially and upon reconsideration. Plaintiff filed a timely request for a hearing before an administrative law judge ("ALJ"). ALJ Jay E. Levine held a hearing on February 11, 2004. Plaintiff appeared with counsel and testified at the hearing. On April 27, 2004, the ALJ issued a decision denying benefits. Plaintiff sought review of this decision before the Appeals Council, which denied the request for review on August 18, 2006.

Plaintiff commenced the instant action on September 18, 2006.

## CONTENTIONS

Plaintiff raises three issues in this action:
1. Whether the ALJ properly developed the record.
2. Whether the ALJ properly considered the Mental Residual Functional Capacity Assessment completed by the state agency physician.
3. Whether the ALJ accepted jobs that are inconsistent with the state agency physician's opinion of functional status.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (internal quotation marks omitted); *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson*, 402 U.S. at 401 (internal quotation marks omitted).  This Court must review the record as a whole and consider adverse as well as supporting evidence.  *Green v. Heckler*, 803 F.2d 528, 929-30 (9th Cir. 1986).  Where evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld.  *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## DISCUSSION

A.   Issue One.

In the decision, the ALJ stated, "The medical evidence of record does not document any direct assessment of the claimant's residual functional capacity[2] by a treating physician."  (AR 12.)  Plaintiff points out that on February 20, 2003, Richard F. Jones, D.O., of Jones and Jones Medical Associates, Inc., noted, "Disability Form filled out today."  (AR 222.)  On March 11, 2003, Dr. Jones noted, "[D]isability form is filled out."  (AR 218.)  Plaintiff contends that it was error for the ALJ to overlook those assessments by Dr. Jones and that the ALJ had a duty to make reasonable efforts to obtain those forms.  (JS 3-5.)

The Court finds this argument unavailing.  The ALJ has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered, even when the claimant is represented.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996) (citing *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).  However, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  *Mayes v.*

---

[2] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989); 20 C.F.R. § 404.1545(a)(1); *see also Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998) (residual functional capacity is the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs") (internal quotation marks omitted) (citing 20 C.F.R. 404, Subpt. P, App. 2 § 200.00(c)).

*Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing *Tonapetyan*, 242 F.3d at 1150). Here, with respect to plaintiff's limitations, the record before the ALJ was neither ambiguous nor inadequate.[3]

Plaintiff had two consultative[4] physical examinations: an internal medicine evaluation by Concepion A. Enriquez, M.D., in November of 2002 (AR 12-13, 182-85); and an orthopedic evaluation by Warren David Yu, M.D., in December of 2003 (AR 12-13, 256-64). Dr. Enriquez reviewed plaintiff's medical history, family history, and employment history and performed a physical examination, musculoskeletal examination, and neurological examination. (AR 182-85.) Dr. Enriquez opined that plaintiff could occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds; stand and/or walk with normal breaks for six hours in an eight-hour workday; and sit with normal breaks for six hours in an eight-hour workday. (AR

---

[3] The Court notes that in order to meet the statutory definition of "disabled," a claimant must satisfy both medical and vocational components. 42 U.S.C. § 1382c; *Frost v. Barnhart*, 314 F.3d 359, 365 (9th Cir. 2002). To satisfy the medical component, the claimant must prove an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To satisfy the vocational component, a claimant must prove that his or her impairments "are of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* at § 1382c(a)(3)(B).

The parties do not appear to dispute the ALJ's finding that plaintiff had the following impairments: cervical and right trapezius pain, a history of a Parkinsonian syndrome and upper extremity and neck tremor, and a history of depression and anxiety. (*See* JS 3-6.) Accordingly, the Court understands the issue to be whether the evidence regarding the restrictions on plaintiff's ability to engage in substantial gainful work was so ambiguous or sparse as to require development by the ALJ.

[4] A consultative examination is purchased by the Administration when, *inter alia*, the evidence as a whole, medical and non-medical, is insufficient to support a decision on a claim, or when the evidence is inconsistent or ambiguous. 20 C.F.R. § 416.919a(b), (b)(4).

185.) Dr. Yu conducted similar reviews and examinations and concluded that plaintiff could walk without an assistive device; sit, stand, or walk for up to six hours in an eight hour work day; occasionally lift 20 pounds and frequently lift 10 pounds; and have frequent use of her upper extremities for certain tasks. (AR 256-64.)

Plaintiff also had a consultative psychiatric examination in November of 2002. (AR 178-81.) As discussed in greater detail below, that examination found, in pertinent part, "zero to mild" limitations in plaintiff's ability to engage in complex tasks. *See* discussion, *infra*; *see also* AR 180-81. At the hearing, the ALJ questioned plaintiff about her education, past work experience, and medication use. (AR 271-74, 279-80, 291-92.) The ALJ also asked plaintiff about her cervical pain, tremors, migraines, and mood disorders and their effects on her daily life. (AR 275-91.)

Thus, there was ample evidence regarding the extent of plaintiff's physical and mental limitations. Moreover, the Court finds that the evidence was not ambiguous. The Court further notes that, contrary to her allegation in the Joint Stipulation (JS at 4), plaintiff was represented by counsel at the hearing (*see* AR 269) and the ALJ thus did not have a heightened duty to develop the record. *Cf. Tonapetyan*, 242 F.3d at 1150 ("When the claimant is unrepresented . . . the ALJ must be especially diligent in exploring for all the relevant facts"). Accordingly, the ALJ was not obligated to develop the record by seeking the disability form or forms referred to in Dr. Jones's notes.

B.   Issue Two.

On April 17, 2003, M. Becraft, M.D., a state agency physician who reviewed plaintiff's file, completed a Mental Residual Functional Capacity Assessment for plaintiff. (AR 228-46.) In this assessment, Dr. Becraft found that plaintiff was "moderately limited" in the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; and the ability to travel to unfamiliar places or use public transportation. (AR 243-44.) In the decision, the ALJ stated, "Similarly, in a second such assessment [by a state agency psychiatrist], dated April

2003, another State Agency Psychiatrist [*i.e.*, Dr. Becraft] opines that the claimant has retained the mental residual functional capacity for at least simple, repetitive tasks (Exhibit 9F/8)."[5]  Plaintiff argues that the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Becraft's opinion regarding plaintiff's moderate limitations,[6] as a state agency physician's opinion must be considered "expert opinion evidence of nonexamining sources." (JS at 7-8, citing, *inter alia*, Social Security Ruling 96-6p, 1996 WL 374180.)

Dr. Becraft did find, and the ALJ did acknowledge, that plaintiff was "not significantly limited" in (*inter alia*) the ability to understand and remember very short and simple instructions, the ability to carry out very short and simple instructions, and the ability to make simple work-related decisions. (AR 243; *see* AR 13.). However, in his determination of the level of plaintiff's mental impairment, the ALJ found that plaintiff's residual functional capacity limited her to "low stress jobs" (AR 16), which he defined in the hearing as jobs that do not require the worker "to have to respond to repeated requests of information from the public or fellow employees, but do[] not preclude all contact from either of those groups" (AR 293).  This assessment does not take into account Dr. Becraft's finding that plaintiff was moderately limited in the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; and the ability to travel to unfamiliar places or use public transportation. (AR 243-44.)

In evaluating physicians' opinions as to a claimant's impairments, the case law

---

[5]   The ALJ's reference to Exhibit 9F/8 (AR 235) is apparently in error.

[6]   Dr. Becraft also found that plaintiff was between "not significantly limited" and "moderately limited" in the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to sustain an ordinary routine without special supervision; and the ability to be aware of normal hazards and take appropriate precautions. (AR 243-44.)  Plaintiff does not take issue with the ALJ's treatment of these findings.

and regulations distinguish among three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither treat nor examine the claimant (non-examining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *limited on other grounds*, *Salee v. Chater*, 94 F.3d 520, 523 (9th Cir. 1996); *see also* 20 C.F.R. §§ 404.1502, 416.927(d). If a treating or examining physician's opinion is not contradicted by another physician, an ALJ may not reject it without provide "clear and convincing reasons." If the opinion is contradicted, the ALJ may not reject it without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830 (internal quotation marks omitted).

The opinion of a non-examining physician is accorded less weight. By itself, it is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Id.* at 831. However, the ALJ may not simply reject an uncontradicted non-examining physician's opinion without explanation. First, as a general rule, an ALJ may not reject a physician's opinion in favor of his own interpretation of the medical evidence; nor may he substitute his own judgment for that of a physician's. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975); *Rohan v. Chater*, 98 F.3d 966, 970-71 (9th Cir. 1996). Moreover under Social Security Ruling 96-6p and the Social Security regulations, the ALJ must consider the opinions of non-examining state agency physicians as expert opinion evidence and must explain the weight given to the opinions of such physicians. Social Security Ruling 96-6p, 1996 WL 374180, *2; 20 C.F.R. §§ 416.927(f)(2)(i)-(ii), 404.1527(f)(2)(i)-(ii); *see also Andrews v. Shala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ( "[G]iving the examining physician's opinion *more* weight than the nonexamining expert's opinion does not mean that the opinions of nonexamining sources and medical advisors are entitled to *no* weight.") (emphasis in original).

///

Dr. Becraft's opinion regarding plaintiff's limitations in traveling and using

public transportation was contradicted by Donald Williams, M.D., a state agency reviewing physician, who found no such limitation. (AR 211.) However, Dr. Becraft's assessment of plaintiff's limitations regarding detailed instructions was uncontradicted by the opinions of other physicians. As the ALJ acknowledged, Dr. Williams also opined that plaintiff was moderately limited in the ability to understand and remember detailed instructions and the ability to carry out detailed instructions. (AR 211-12.) Furthermore, consultative psychiatrist Ernest Bagner III, M.D., who examined plaintiff in November of 2002, gave her a Global Assessment of Functioning ("GAF") score of 77,[7] but found that she would have "zero to mild limitations" in, in pertinent part, completing complex tasks. (AR 180-81.) The Court further notes that Dr. Becraft reviewed Dr. Bagner's report in assessing plaintiff's mental residual functioning capacity  (*See* AR 228.)

The ALJ was required to explain the weight given to Dr. Becraft's opinion regarding plaintiff's moderate limitations. Social Security Ruling 96-6p, 1996 WL 374180, *2; 20 C.F.R. §§ 416.927(f)(2)(i)-(ii), 404.1527(f)(2)(i)-(ii). Moreover, given that Dr. Becraft's opinion dovetailed with Dr. Bagner's opinion regarding complex tasks, the ALJ should have given clear and convincing reasons for rejecting Dr. Becraft's opinion regarding detailed instructions. *See Lester*, 81 F.3d at 830. Remand is thus required for reconsideration of Dr. Becraft's opinion. If the ALJ rejects Dr. Becraft's opinion, he must explain the weight given and state the reasons for rejecting it as set forth above.

C.      Issue Three.

---

[7]      A GAF score of 77 indicates that the examinee has only "transient and expectable reactions to psychological stressors" and "no more than slight impairment in social, occupational, or school functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., text rev., 2000).

Plaintiff contends that the ALJ erred in accepting vocational expert Corinne Porter's conclusion that plaintiff was capable of performing such jobs as Charge Account Clerk and Surveillance System Monitor. Plaintiff asserts these jobs are not within plaintiff's residual functional capacity as determined by Dr. Becraft. As discussed above, Dr. Becraft concluded that plaintiff was "moderately limited" in, *inter alia*, the ability to understand and carry out detailed instructions. Plaintiff contends that because the positions of Charge Account Clerk and Surveillance System Monitor require a reasoning level of 3 under the scale set forth in the Dictionary of Occupational Titles (the "DOT"), plaintiff cannot perform such work. (JS 12-14.)

Reasoning levels are found in the DOT under the General Education Development definitions. They gauge the minimum ability a worker needs to complete the job's tasks. DOT Appendix C - Components of the Definition Trailer, Scale of General Education Development (GED) Reasoning Development ("DOT Reasoning Scale"), 1991 WL 688702; *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005). The DOT reasoning levels range from a low of 1 to a high of 6. As one goes up the numerical reasoning scale, the level of detail involved in performing the job increases while the job tasks become less routine. *Meissl*, 403 F. Supp. 2d at 983.

For example, a job with a reasoning level of 1 only requires that the worker be able to "[a]pply commonsense understanding to carry out simple one-or two-step instructions" in "standardized situations with occasional or no variables." DOT Reasoning Scale. A job with a reasoning level of 2 requires that the worker "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "deal with problems involving a few concrete variables in or from standardized situations." *Id.* A job with the reasoning level of 3 requires that the worker "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.* As plaintiff contends,

Case 5:06-cv-00979-FFM   Document 21   Filed 02/27/08   Page 10 of 12   Page ID #:73

Charge Account Clerk and Surveillance System Monitor jobs require a reasoning level of 3.  *See* DOT 205.367-014 (Charge-Account Clerk), 1991 WL 671715; DOT 379.367-010 (Surveillance-System Monitor), 1991 WL 673244.

     Clearly, a job with a reasoning level of 1 entails only simple, repetitive tasks. *See* DOT Reasoning Scale; *see also*, *e.g.*, DOT 402.687-014 (Harvest Worker, Vegetable), 1991 WL 673298; DOT 389.687 (Cleaner, Window), 1991 WL 673282; *Meissel*, 403 F. Supp. 2d at 984.  Moreover, even though the definition of reasoning level 2 refers to "detailed" instructions, it is not inconsistent with a finding that a claimant's residual functional capacity limits him or her to simple, repetitive tasks, as the DOT definition specifically notes that the instructions must be "uninvolved." *Meissl*, 403 F. Supp. 2d at 985.  Reasoning level 3, however, requires that the worker deal with "several concrete variables" from standardized situations.  The worker must also understand and carry out instructions given in different formats.  These requirements indicate that, in a reasoning level 3 job, plaintiff would be faced with instructions involving a level of complexity beyond the limitations found by Dr. Becraft.

     Moreover, the duties of a Charge Account Clerk involve, *inter alia*, assisting customers in filling out charge account applications, reviewing applications, and verifying entries and correcting errors on charge accounts using an adding machine. *See* DOT 205.367-014 (Charge-Account Clerk), 1991 WL 671715.  In turn, the duties of a Surveillance System Monitor involve, *inter alia*, monitoring the premises of public transportation terminals to detect crime or disturbances using closed circuit television monitors, notifying the authorities of the need for corrective action, and notifying repair services of equipment malfunctions.  *See* DOT 379.367-010 (Surveillance-System Monitor), 1991 WL 673244.  Both jobs would clearly involve detailed instructions going beyond a few simple steps.  The definition of reasoning

///

level 3 and the specific duties of the positions Porter identified therefore militate

10

against finding that the positions comport with the limitations found by Dr. Becraft.

Defendant contends that the positions of Charge Account Clerk and Surveillance System Monitor have a specific vocational preparedness ("SVP") rating of 2 and are thus considered unskilled work. *See* DOT 205.367-014 (Charge-Account Clerk), 1991 WL 671715; DOT 379.367-010 (Surveillance-System Monitor), 1991 WL 673244; *see also* Social Security Ruling 00-4p, 2000 WL 1898704 (S.S.A.), *3 ("[U]nskilled work corresponds to an SVP of 1-2"). (JS 15-16.) Accordingly, argues defendant, they are not inconsistent with Dr. Becraft's opinion. Defendant misunderstands the nature of SVP ratings. SVP ratings focuses on "the amount of lapsed time it takes for a typical worker to learn the job's duties. . . . A job's reasoning level, by contrast, gauges the minimal ability a worker needs to complete the job's tasks themselves." *Meissl*, 403 F. Supp. 2d at 983 (internal quotation marks and citation omitted). Stated another way, the SVP goes to the level of vocational preparation, rather than the job's simplicity, which the reasoning level addresses. *Id.* Thus, an SVP level of 2 does not indicate that the job involves only simple instructions.

An ALJ is required to accurately set out the plaintiff's limitations in his hypothetical to the vocational expert. *Andrews*, 53 F.3d at 1043-44 (remand upheld where hypothetical left out categories of plaintiff's moderate limitations). Here, in his hypothetical to Porter, the ALJ failed to set out plaintiff's limitations regarding detailed instructions, as found by Dr. Becraft. Accordingly, if, on remand, the ALJ does not reject Dr. Becraft's opinion of plaintiff's limitations regarding detailed instructions, a vocational expert must be called again and plaintiff's limitations must be set out accurately in the hypothetical to such expert.

///
///
///

## CONCLUSION

Therefore, the matter requires remand for further proceedings. The judgement

of the Commissioner is accordingly reversed and the matter is remanded pursuant to sentence 4 of 42 U.S.C. § 405(g) for further proceedings.

**IT IS SO ORDERED.**

DATED: February 27, 2008                    /S/ FREDERICK F. MUMM
                                                                    FREDERICK F. MUMM
                                                                    United States Magistrate Judge